All right, our fifth case for this morning is Ernel Silais against Attorney General Barr. Mr. Heron. Good morning. May it please the court, my name is Jeffrey Heron and I represent the Department of Immigration Appeals to set out the standards for evaluating requests that it exercise its sua sponte authority to reopen. It didn't follow those standards in this case. Mr. Silais submitted a motion to reopen containing statements from two of his sisters describing how one of his sisters and his mother were stripped naked, beaten and choked by Haitian militants looking for Mr. Silais. The board never looked at any of this evidence because it said that it was untimely. But according to its own case law, it should have considered whether Mr. Silais qualified for an exception to the timeliness requirement for cases in which there's been a change in law. Now, in this case, that change in the law is the board's own decision in matter of LAC, which the board set out two new requirements before an IJ, an immigration judge, can deny a case due to a lack of corroboration. And the judge in this case didn't follow either of those requirements. First of all, the judge has to make a final ruling on the record concerning the sufficiency of an applicant's explanation. For not including the corroboration that the judge wants. Secondly, if instead of trying to justify the lack of the evidence, the applicant asks for additional time to go get the evidence the judge wants, the judge has to consider granting a continuance. How do we have jurisdiction to address the sua sponte argument? This court has jurisdiction because this is a legal argument and under this court's holding in the Anaya case and under the Immigration and Nationality Act itself, section 1252, H of D, I believe. And the legal heir is not committing, is not addressing that particular case you've raised? It's a legal heir when the Supreme Court has repeatedly held that an agency heirs is a matter of law. Even if it has a policy with regard to how it will exercise its discretion if it departs course from that policy and it doesn't explain why it's not doing so. And that's something that goes back to Icardi. It's something that you see in, I believe it was Justice Scalia's decision in the Ioannis versus Ushah case. So you're, I'm just trying to understand your argument. Your legal heir is, argument is that they didn't follow their own policy as opposed to they didn't consider the matter of LAC? Exactly. So in matter of GD. Those were two separate questions. I want to understand what you're, what legal heir you claim they made that would give us jurisdiction? Yes, Your Honor. The legal heir is that in matter of GD, the board set out a standard for evaluating whether to reopen a case. In a precedential opinion. And it's a precedential opinion. And the court goes to some lengths to explain that it wants to flesh out this issue. And it says that it will reopen sua sponte if there's been a fundamental change in law. And it distinguishes that from incremental changes in law. Now in this case, the board didn't say anything about whether LAC was a change in law or whether it was a fundamental change in law. It didn't say anything about matter of GD. So it essentially completely abdicated its responsibility to look at this legal question, which is a question of law that this court has jurisdiction over. Now, the board also violated the Administrative Procedure Act and administrative law norms when it failed to consider whether Mr. Soleil's evidence was previously unavailable, which is an issue that is required for motions to be open under the board's own regulations. Mr. Soleil submitted a statement from one of his sisters, Dula, as well as another statement from his sister, Minushka, in his own declaration as well, that explained that after he was forced to flee Haiti, his family was effectively destroyed. They had to flee. His mother died during that flight. And as a result, he became estranged from his sisters, who blamed him for the death of his mother, and who also were essentially itinerants in Haiti, who were lacking a stable home, who did not have... I just want to say, yes, I'm familiar with those facts. The board also, though, seems to be concerned that even if we were to give Mr. Silva more of a benefit of the doubt, he still waits for a period of time that the board thinks is too long, and thus, in the interest of orderly proceedings, it's not going to let him fill in the record. There's some outer reasonable limit of time, and this is so discretionary on their part. We're not going to micromanage whether they think a year is enough, or three months, or something else. I think the amount of time that he waits is relevant to the question of whether I exercise due diligence, which is an element of the equitable tolling test. And equitable tolling is one of only four legal issues that we raised before this court. I want to stress that that's separate from the change in law argument. If there's been a change in law, the board has never said that there's any time limit for that. Now, if they want to impose a time limit of that nature, for a request of that type, they can do so, but they have to look at that issue and engage in a reasoned decision-making process, as the Supreme Court has held in numerous decisions concerning administrative law. Okay, so just to be clear, where the board says that Mr. Silad hadn't been diligent enough because he waited for two years after the 2015 decision, and actually quite some time, three months or so after we issued our decision, you see that as an equitable tolling argument? I think that the board was referring to equitable tolling when it said that there had been a lack of due diligence, and that is an element of equitable tolling. Again, that's only one of four issues. Now, even with regard to that point of equitable tolling, the board's analysis was deficient because it didn't say anything about what due diligence is, what its standard is for due diligence, and due diligence has to be circumstance-specific. So the board should have considered the specific circumstances, like the fact that this is a family that was destroyed, that it was very difficult to reach them, and that it was essentially impossible to do so until relatively recently in the case. Now, the board didn't consider any of those issues, so even with regard to equitable tolling, the board's analysis fails to comply with the Administrative Procedure Act. That's separate from the change in law argument that we are also highlighting as well. And I want to also mention that just this year in the case of Fuller v. Whitaker, this court reiterated that there is jurisdiction to address a question of whether the board failed to consider evidence that was attached to a non-citizen's motion to reopen. So that's additional authority for this court having jurisdiction in this manner. This court should also take this opportunity to reconsider its incorrect holding in Darn Shulin v. Lynch, that an immigration judge need not give an applicant notice of a need for additional corroboration before denying her case on that basis. This issue is really covered extensively in the briefs, and I'm not going to delve into the issues of statutory interpretation or constitutional law that are set out there. Why shouldn't you have raised that argument earlier? In one of your prior appearances before the court. Your Honor, I assume you're referring to the directive appeal in which we did address that issue in response to the government's argument that it was harmless error for the judge to not have considered evidence that the judge herself said she wanted. And when we presented that evidence to the judge, this was a declaration from Mr. Soule's, the brother of his then fiance. We presented that declaration to the judge. The judge refused to consider it, then denied his case on that basis. We argued that that was an error of law. In response, the government argued that this was essentially harmless error because we should have submitted other evidence, like statements from family members. And we argued on the direct appeal, albeit in a footnote, that that would have violated our understanding of the Real ID Act, which comes from the Ninth Circuit, and now the Third Circuit's interpretation of that of the Seventh Circuit. So the court held that we had weighed that issue in the directive appeal, but this is a fundamentally different context because here we actually have the evidence. We've got the evidence, and that makes this case distinguishable. It shows, first of all, that Mr. Soule can establish prejudice, which is relevant for the due process issues. And from a basic humanitarian perspective, it matters because this is a man whose life is on the line, and you can see that by looking at his sister's declarations where they talk about the brutal violence against this family. And the fact that the issue was triggered implicitly in the prior direct appeal is not a reason why this court can't reconsider this issue. There's no case saying it can't. If anything, it's at best a prudential doctrine, and there are other prudential reasons why this court should consider this issue. And I want to highlight just two reasons. One is that this case is a perfect example of why Darren Shulman gets it wrong, because when Mr. Soule was given notice of the need for this evidence, he went out and got it. First of all, he went out and got the statement from the brother of his fiancée, and then later he went and got the evidence from his sisters. Didn't he have notice back in 2014 that he needed the corroboration? And the affidavits didn't come until 2017? And you're referring to the notice being, I take it, the immigration judge's decision in this case? Correct. Which you seem to, in your briefing, have agreed that he was on at least some notice back then that he needed corroboration. That's correct, but if you look at the sister's declarations, and I urge you to do so, you'll see that it wouldn't have been possible in 2014 to get this evidence because of the fact that the family was estranged and the sisters were in an unknown location. So there was no ability to get that at that point in time. I see that my time is up, Your Honors. For the foregoing reasons, we ask that this Court grant Mr. Soule his petition for review. All right. Thank you. Mr. Hayes. Good morning, Your Honors. May it please the Court, Timothy Hayes on behalf of the Attorney General. Mr. Soule filed an on-time motion to reopen before the Board, and the Court should deny the petition for review. Regardless of the underlying rationale for invoking equitable tolling, the doctrine requires a showing of due diligence. Whether Mr. Soule could reasonably have been expected to file his motion earlier than he did, and the date of his motion was August 14th, 2017. The Board pointed to several instances where he could have filed the motion earlier than he did. Mr. Soule argues that a matter of LAC was a fundamental change in And that's before the Board issued its original decision, but he didn't file anything with the Board concerning that until August 14th, 2017. The second issue was, this issue was Should he have filed a motion to reopen if he had not yet been able to track down his sisters? I mean, just a place, I'm trying to figure out, you know, the difficulty of somebody who's fundamentally off-grid in another country, what the government regards that person's burden to be. The motion to reopen is meant to add evidence to the record that should have been there originally. Right, so you don't have it yet. It's not designed to add to your case once an immigration judge identifies in their burden of proof analysis certain problems. That's the whole point of the Raphael v. BKC in this Court's case law, Is there a rule, I'm trying to think, there is an aspect of hide the ball to this. Is there a rule that you should always submit affidavits from family members, and so you don't have to guess that that's what the immigration judge wants? Or is there something about this case that should have allowed him to realize that that's what he should have gotten at some time before the immigration judge ruled? Well, it's circumstance specific, Your Honor. In a case where you're alleging prior harm in a country, and there is at least an indication that another person could corroborate that prior harm, you should make an attempt to get an affidavit from them, whether it's a friend or a family member. And if you cannot get an affidavit for them, all you have to say is, I tried getting in touch with that person, they could not be reached. And the government would accept that as an adequate explanation? I assumed if it was in an affidavit, and they explained the process that they went to try to get in touch with them, I don't know if DHS would, but I would assume an immigration judge would probably find that acceptable. I'm not the fact finder. It's a funny thing to say. Did he try to do that at any point? Not before the immigration judge, no, Your Honor. He actually was asked by the DHS attorney whether he thought about getting affidavits from his family members, and he said, I didn't know I needed to do that. So he made no attempt before the immigration judge to do that. And the earliest that we see any attempt to do that was the sister's affidavit, the first sister, and this motion is reopened, says that she was contacted in May of 2017. So as part of your reason, or the board's reason for thinking there's a lack of due diligence is that he didn't even try until 2017, rather than he tried and failed because of conditions in the country and the ability of the sisters? Right, right, exactly. Congress has set 90 days. So equitable tolling is essentially a doctrine where there's some impediment that prevents you from filing. So once that impediment is lifted, or you should have known that the impediment was lifted, the clock starts to run again. There's no unlimited time period to sort of get this information. And that's particularly the problem. We don't know that he was diligent in attempting to obtain the documentation when he knew he should have gotten it. Turning to the sua sponte denial, the court lacks jurisdiction generally over the board's decision not to sua sponte reopen. The Fuller case is not implicated here because the exception in this court's case law is where the board indicates in its decision that its discretion rested on an erroneous assumption of law, and we don't have any indication in the two decisions here. It seems to be making a procedural argument, as far as I can tell, under a matter of LAC, that because the board didn't go through these newly articulated steps from LAC, that that's an error of process that could have potentially led to a different result. The board does recognize the matter of LAC argument, and it's in the record of 27 to 28. It says the respondent asserts that his case should be reopened because the immigration judge's decision predates the board's decision in a matter of LAC, and because the immigration judge did not give him notice that additional probation was required. Then they go on to explain that they don't find that persuasive or an exceptional situation. The board clearly understood why he wanted reopening, but they declined to find this situation exceptional, and that's within its discretion. Do you agree that LAC is a significant change in law? Personally, no, but officially ... I'm asking for your official opinion. I mean, in a matter of LAC itself, it has a paragraph that discusses case law of other courts, and it says it's in accord with this court's. So if you take the notion that this court's case law is binding on its jurisdiction, it's never changed in this jurisdiction. Arguably, maybe it's changed in another jurisdiction, but not in this one. And I first want to touch on the Anai Aguilar case. There is a case where this court cites the matter of a TD, which is the board case that discusses fundamental changes in law and exceptional circumstances. And the court actually said that there's no meaningful standard because we don't know what a fundamental change in law is, that there's no policy or system in place to determine what that is, unless the board has some sort of adjudicatory standard, and there's nothing here to say what a fundamental change in law is. So I just wanted to make one comment about the board's position on the corroborating evidence. Certainly, we know from the Real ID Act that the immigration judge has the prerogative to ask for corroborating evidence pretty much one way or the other, but it strikes me as a little bit of heads-eye, wind-tails-you-lose on the part of the United States, because it's one thing to say corroborating evidence, and it's another thing down to a more granular level to say this incident needed corroboration in this way, and that incident needed corroboration in a different way. And it's the exact opposite of the way the government approaches qualified immunity cases, because the Supreme Court has told us at least 35 times that you need to assess a police officer's activity not at a broad level, like don't violate the Fourth Amendment or don't violate due process, but at a very granular level. So a person in that instance has the burden of telling the government very specifically what was wrong, but the government seems to be saying, here, we don't need to do that. We can just say we get to ask for corroboration, and that's somehow notice of what's needed. It's a little troublesome. I agree with borderline cases there might be, but I don't even see this as a borderline case, Your Honor, because there were four incidents of harm in Haiti, and none of them were corroborated, not a single one, despite... I thought there was the medical evidence of the scars that were consistent with the attack that he... But a steady attack, I guess, is that one. But being consistent doesn't mean it was caused by. If it was contemporaneous medical records, if it was medical records... It wouldn't be. There's whole centers, as you well know, I'm sure, in the United States where victims of torture come, and if you don't have fingernails anymore, maybe it wasn't yesterday that you lost them, but maybe somebody ripped them off. Right. It wouldn't be consistent with that theory. Yeah. And I don't mean to belittle it, but it's still a theory. You would still need more evidence to show. So no later medical testimony could corroborate... Well, I wouldn't say no later testimony. ...a story of torture? But I would argue that the person's testimony, the applicant's testimony itself, would have to be sufficiently persuasive to go along with it. That would bolster it. But here we have an I.J. who... I thought the I.J. found him credible. ...with concerns about credibility, and that's why she gave him the benefit of the doubt and said, I don't think this is enough for me to find you incredible, but that's why I'm expecting corroboration. So like I said, I think this is more of a... This isn't really a borderline case. It might be a borderline case with a credibility determination, but it certainly isn't a borderline case with a burner proof issue. Okay. And unless Your Honor has any further questions. I see none. So thank you very much. Thank you. And so Mr. Heron, was his time up? It was. Yeah. I'll give you a minute. Thank you very much, Your Honor. I just want to address the last point that counsel made, that this is not even a borderline case with regard to corroboration. Mr. Saleh submitted his political party card, a statement from a member of his political party to corroborate that he was a member of that party. He submitted emails and other documents that showed that he was a member of the organization that he described that was dedicated to helping orphans. He submitted a medical declaration that testified in which the physician who examined him testified that his scars were consistent with somebody who experienced the mistreatment that he described. He submitted an expert declaration and had an expert who testified in court that his account was consistent with what he described. He submitted a variety of evidence. This was an extremely well corroborated case, but the immigration judge focused in on the lack of a statement from the brother of his fiancee, which he then went and got. And to provide additional corroboration with the judge then rejected. So I want to emphasize that this was a well corroborated case. We just didn't have exactly what, I won't even say the judge, but what the oil attorney later said on direct appeal that the government would have wanted in this case. Thank you very much. Thank you very much. Thanks to both counsel. We will take this case under advisement.